UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PAUL ANDRETTA,

           Plaintiff,

   -against-

JANET NAPOLITANO, AS SECRETARY OF THE
UNITED STATES DEPARTMENT OF HOMELAND
SECURITY,

           Defendant.

------------------------------------------------------------X

MEMORANDUM AND ORDER

09-cv-4759 (WFK) (JO)

**WILLIAM F. KUNTZ II, United States District Judge**

Paul Andretta ("Plaintiff") brings this action against his employer, United States Department of Homeland Security ("DHS") ("Defendant"), by its secretary Janet Napolitano, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, 2302 ("ADEA"). Plaintiff, who was sixty-one years old at the time of the events giving rise to this action, asserts Defendant discriminated against him on the basis of his age by failing to promote him. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, this Court grants Defendant's motion.

## I.    FACTUAL BACKGROUND

Defendant is a federal agency and an employer within the meaning of the ADEA. Defs.' Rule 56.1 St., at ¶ 10.[1] Plaintiff is a Supply Chain Security Specialist at the Bureau of Customs

---

[1] By citing to the parties' Local Civil Rule 56.1 Statements of Undisputed Facts, the Court incorporates by reference all relevant sources cited therein.

and Border Protection ("CBP"), an agency organized within Defendant DHS. Pl.'s Rule 56.1 St., at ¶¶ 2, 4.

Plaintiff began working for the United States Customs Service in 1970 as a General Schedule level 5 (GS-5) employee stationed at John F. Kennedy Airport ("JFK"). Defs.' Rule 56.1 St., at ¶¶ 2, 7; Andretta Dep. Tr. at 31:11–23. In 1982, Plaintiff was assigned to the Contraband Enforcement Team as a Senior Inspector (GS-11), where he was responsible for searching and reviewing cargo from high risk aircraft. Andretta Dep. Tr. at 46:10–22. After approximately two years in that position, in 1984, Plaintiff moved to a Passenger Division, where he was responsible for supervising up to 20 Customs Inspectors at a time. Id. at 46:22–24, 51:8–52:8. In 1986, Plaintiff applied and was selected for a promotion to Supervisory Customs Inspector and Supervisory Customs and Border Protection Officer (GS-12), in which position he remained for over nineteen years. Defs.' Rule 56.1 St., at ¶ 2; Andretta Dep. Tr. at 45:24–46:3.

The United States Customs Service was reorganized under Defendant DHS in 2006. Defs.' Rule 56.1 St., at ¶ 2, n.2. At the time of the reorganization, Plaintiff applied for and was selected for a non-supervisory position as a Supply Chain Security Specialist (GS-13) within the Office of Field Operations, Customs Trade Partnership Against Terrorism ("C-TPAT") Division, a division within the CBP. Id. at ¶¶ 2, 4; Pl.'s Rule 56.1 St., at ¶ 4; Defs.' Decl. in Supp. of Summ. J., Ex. I. Plaintiff has remained in this position to date; he was not selected for five GS-13 supervisory positions to which he applied prior to 2008. Defs.' Rule 56.1 Reply St., at ¶ 18.

As a Supply Chain Security Specialist, Plaintiff validates business partner entities in the C-TPAT program. Id., at ¶¶ 5, 6. His responsibilities include "ensur[ing] that the international supply chains utilized by U.S. importers and other partners . . . [are] secure from intrusion by

2

terrorist organizations" and "vetting each potential partner" through a multi-step process involving multiple database and on-site reviews. Defs.' Decl. in Supp. of Summ. J., Ex. I. Plaintiff performs these responsibilities in plain clothes and he does not carry a weapon. Defs.' Rule 56.1 Reply St., at ¶ 8. He has not worked as a first-line SCBPO since April 2006, approximately two years prior to the events described below. Id., at ¶ 70.

In January 2008, Plaintiff responded to a posted Vacancy Announcement for the position of Supervisory Customs and Border Protection Officer ("SCBPO Position"), GS-1895-13, a second-line supervisory position. Id., at ¶¶ 9, 17. He was sixty-one years old at the time. Id., at ¶ 1. A GS-13 SCBPO is responsible for "planning, directing, coordinating, assigning and evaluating all work activities regarding the full range of inspection, intelligence, analysis, examination, and law enforcement activities relating to the arrival and departure of persons, conveyances, and merchandise at Ports of Entry." Id., at ¶ 19. Defendant sought to fill three vacancies for the SCBPO Position. Pl.'s Rule 56.1 St., at ¶ 38.

The Recommending Official for the 2008 SCBPO Position was Susan Mitchell, the Executive Director of CBP Operations. Id., at ¶ 12. Camille Polimeni, the JFK Area Director, was responsible for preparing a recommendation memorandum for Ms. Mitchell to fill the SCBPO Position. Id., at ¶ 13. Following the receipt of applications for the SCBPO Position, the Minneapolis Hiring Center prepared two certificates of eligible candidates, a non-competitive list of candidates who held GS-13 positions and a competitive list of candidates who met the requirements for the position but did not hold GS-13 positions at the time. Id., at ¶¶ 22, 23. A total of twenty-seven candidates were certified as eligible for the Position: four (including Plaintiff) on the non-competitive list and twenty-three on the competitive list. Id., at ¶ 24. The Minneapolis Hiring Center provided these lists to Ms. Polimeni along with the twenty-seven

individual application packages. Id., at ¶ 22. After receiving these materials, Ms. Polimeni's administrative assistant prepared matrices of the competitive and non-competitive candidate lists, which compared the applicants based on their education above high school, awards/commendations within the last ten years, variety of assignments, and other factors such as special skills and relatives that work for DHS/CBP. Id., at ¶¶ 27, 28. The administrative assistant also sent out a supervisory checklist to the applicants' supervisors and a questionnaire to the applicants regarding conflicts of interest. Id., at ¶ 26. Equipped with the application packages and these three supplemental tools—the matrices, the checklists and the questionnaires—Ms. Polimeni and three Assistant Area Directors, Robert C. Meekins, Richard B. O'Connell and John Mirandona, individually reviewed the applications and met to discuss each of the applicants. Id., at ¶¶ 29–34. Executive Director Mitchell stated that this recommendation process was the same process used in prior selection and recommendation processes. Pls.' Rule 56.1 St., at ¶ 21.

At her meeting with the Assistant Area Directors, Ms. Polimeni testified that Mr. Meekins informed her that Mr. Andretta "was not engaged . . . [and] refused to go out in the field". Polimeni Dep. Tr. at 13:20–25.[2] In addition to this feedback, Ms. Polimeni also met with Plaintiff personally in a non-routine meeting scheduled at Plaintiff's request. Defs.' Rule 56.1 Reply St., at ¶¶ 38–44. Plaintiff requested the meeting because he wanted to express his serious interest in the SCBPO Position, despite having been away from a uniformed position for two

---

[2] In his initial unsworn declaration on November 17, 2008, Meekins stated, "I don't recall the details of any input that I may have had regarding Mr. Andretta at [the time of the meeting]". Pl.'s Decl. in Opp. of Summ. J., Ex.7 at ¶ 11. He also stated that age was "[a]bsolutely not" a factor in the nature of the input he provided. Id. at ¶ 14. Several days later, on November 24, 2008, Mr. Meekins stated in a supplemental unsworn declaration that while he could not remember the circumstances under which he and Ms. Polimeni shared information about Plaintiff, "[d]ue to the passage of time since Mr. Andretta was assigned to [his] chain of command", he could nonetheless "state with certainty that [Ms. Polimeni] did receive information from [him] regarding concerns about Mr. Andretta". Pl.'s Decl. in Opp. of Summ. J., Ex.11 at ¶ 1.

years, and to reassure Ms. Polimeni that he did not plan to retire in the next two years. Pl.'s Rule 56.1 St., at ¶¶ 38–39. At the meeting, Plaintiff also expressed his desire to earn pensionable overtime, which he was not receiving in his present position. Id., at ¶¶ 38–42. In particular, Plaintiff told Ms. Polimeni that that he was interested in increasing his "high three" years of income, which he later explained meant a desire to improve his pensionable overtime by improving the average of his three consecutive, highest-salaried years. Pl.'s Rule 56.1 St., at ¶ 41; Andretta Dep. Tr. at 194:3–195:17. Following this meeting, Ms. Polimeni noted the following on her working copy of the non-competitive matrix: "interested in getting high three . . . As [GS-12 at JFK], lacks motivation, not engaged". Polimeni Dep. Tr. at 70:15–71:1; Defs.' Rule 56.1 Reply St., at ¶ 45. At this same meeting, Ms. Polimeni told Plaintiff that there were only three open spaces and that two individuals were being pushed for the position already. Pl.'s Rule 56.1 St., at ¶ 38.

None of the three Assistant Area Directors recommended Plaintiff for the SCBPO Position. Defs.' Rule 56.1 Reply St., at ¶ 46. The Assistant Area Directors did provide positive input regarding the three candidates who were ultimately selected to fill the vacancies, who were all working as first-line supervisory SCBPOs at JFK at the time of their promotion. Id. at ¶¶ 47, 55, 76. Assistant Area Director O'Connell provided positive feedback about applicant Mark Mather (fifty-one years old at the time), noting his strong work ethic.[3] Id., at ¶ 48. Mr. Mather had nineteen years of experience working with DHS. Id., at ¶ 64. Assistant Area Director Mirandona provided positive feedback about applicants Joseph Rollo (thirty-two years old at the time, with thirteen years of experience with DHS) and Chance Youngs (thirty-three years old at the time, with eight years of experience with DHS), noting, inter alia, that the quality of their

---

[3] Mr. O'Connell recommended two other applicants in addition to Mr. Mather: Martin Black (sixty-two years old at the time) and Brian Quinn (fifty-two years old at the time). Defs.' Decl. in Supp. of Summ. J., Ex. BB at ¶ 9.

Case 1:09-cv-04759-WFK-JO   Document 34   Filed 02/13/13   Page 6 of 19 PageID #: 882

individual performances was outstanding. Id., at ¶¶ 49, 50, 64. Ms. Polimeni never directly supervised or worked with Mather, Rollo or Youngs, but determined based on the totality of information elicited during the recommendation process that they were the three best qualified candidates for the second-line supervisory SCBPO Position. Id., at ¶¶ 53, 54.

Ms. Polemeni forwarded her recommendation memorandum on to Executive Director Mitchell, who proceeded to independently review all relevant application materials. Id., at ¶¶ 60–61. After conducting her review, Ms. Mitchell agreed with Ms. Polimeni's recommendation and recommended Mr. Mather, Mr. Rollo and Mr. Youngs for the SCBPO Position. Assistant Commissioner of CBP's Field Operations, Robert M. Jacksta, selected the same three recommended individuals to fill the position. Id., at ¶¶ 11, 66.

Plaintiff testified he never knew any of the individuals involved in the recommendation process to do or to say anything that could be construed as discriminatory behavior. See id., at ¶¶ 79–81. However, believing he was better qualified for the SCBPO Position than the selected applicants, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") official of the DHS to express his concern that he was the victim of age discrimination when he was not selected for the SCBPO Position. Id., at ¶ 84. On September 16, 2008, Plaintiff filed a formal EEOC complaint alleging age discrimination. Id., at ¶ 87.

On July 16, 2009, ALJ Kevin Berry found that, while Plaintiff had satisfied his prima facie burden for alleging an age discrimination claim, there were no genuine issues of material fact in dispute and Plaintiff had failed to meet his ultimate burden of proving age discrimination. Id., at ¶ 91. On August 3, 2009, Defendant adopted ALJ Berry's Order finding that Plaintiff was not subjected to age discrimination. Id., at ¶ 92. Plaintiff timely filed this action on November

3, 2009 after being advised by the EEOC of his right to do so. Defendant now moves this Court for summary judgment.

## II. STANDARD OF LAW

### A. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (internal editing omitted) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (internal citations omitted).

The Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000). However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001). Therefore, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

### B. ADEA Age Discrimination Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In evaluating discrimination claims brought under the ADEA, courts in the Second Circuit apply the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105–06 (2d Cir. 2010).

Under McDonnell, the Plaintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. McDonnell, 411 U.S. at 802. To establish a prima facie case under the ADEA, the Plaintiff has to show (1) he was a member of the protected class; (2) he was qualified for the position at issue; (3) an adverse employment action was taken against him; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137–38 (2d Cir. 2003). Courts have characterized this initial burden as "minimal" and "de minimis". See, e.g., Miller v. Nat'l Ass'n

of Sec. Dealers, Inc., 703 F.Supp. 2d 230, 245 (E.D.N.Y. 2010) (Vitaliano, J.) (citing Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001)). If the plaintiff establishes a prima facie case, the defendant may rebut the presumption of discrimination by coming forward with evidence supporting a legitimate, nondiscriminatory basis for its actions. McDonnell, 411 U.S. at 802. If the defendant meets this burden, the plaintiff must then show by a preponderance of the evidence that the reasons proffered by the defendant were merely pretext for discrimination. Id. at 804; see also Terry, 336 F.3d at 138; Miller, 703 F.Supp. 2d at 245–46. In order to satisfy this final burden in the McDonnell framework, the plaintiff "must offer evidence that age discrimination was the 'but-for' cause of the challenged actions" and not merely a contributing or motivating factor. Holowecki v. Fed. Express Corp., 382 F.App'x 42, 45 (2d Cir. 2010) (citing Gross v. FBL Fin. Servs., 129 S. Ct. 2343, 2350 (2009)).

### III. DISCUSSION

#### A. Plaintiff's Prima Facie Case Creates an Inference of Discrimination

The Court notes at the outset that the EEOC concluded that Plaintiff had met his prima facie burden of proving age discrimination. See Decl. in Supp. of Summ. J., Ex. X, at 3. In addition, Defendant does not dispute the first three elements of Plaintiff's prima facie case: (1) Plaintiff is and was a member of the protected class (here, over age 40) at the time of his non-selection for the SCBPO Position; (2) Plaintiff was certified as qualified for the SCBPO Position; and (3) Plaintiff was not selected for the SCBPO Position, which non-selection constitutes an adverse employment action. See Demoret v. Zegarelli, 451 F.3d 140, 151–52 (2d Cir. 2006). However, the parties dispute whether Plaintiff's non-selection occurred under circumstances giving rise to an inference of discrimination.

9

Defendants contend that Plaintiff has failed to create an inference of discrimination because he has failed to satisfy "[o]ne manner in which an inference of age discrimination may arise", which is to show evidence of "disparate treatment . . . of similarly situated individuals outside the plaintiff's protected group". Defs.' Mot. for Summ. J. at 6 (emphasis added). In support of its position, Defendant asserts that the three individuals who were selected for the SCBPO Position were not sufficiently similarly situated. Id. at 6–7. But showing disparate treatment of similarly situated individuals is not the only way to create an inference of age-based employment discrimination. Plaintiff may satisfy his minimal prima facie burden merely by showing that Defendant knew of the applicants' age difference and treated younger applicants more favorably than Plaintiff. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 81–82 (2d Cir. 2004) (holding that "A Defendant's Knowledge as to an Employee's Relative Age is Necessary to Support an Inference of Age Discrimination at the Prima Facie Stage") (capitalization in original). While there is no evidence that Ms. Polimeni was aware of Plaintiff's age in preparing her recommendation memorandum, the three Assistant Area Directors who aided Ms. Polimeni in the recommendation process each acknowledged that they were aware of Plaintiff's general age at the time of his application. Pl.'s Rule 56.1 St., at ¶ 30. With this knowledge, regardless of its effect on the recommendation process, the Assistant Area Directors did not recommend Plaintiff for the SCBPO Position in favor of three younger applicants.

Combined, these facts are sufficient to satisfy the fourth prong of Plaintiff's prima facie case. See, e.g., Witkowich v. Gonzales, 541 F.Supp. 2d 572, 579 (S.D.N.Y. 2008) (Conner, J.) ("the fact that the position [plaintiff sought] went to someone fourteen years younger raises an inference of discrimination"); Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 187 (2d Cir. 2006) (upholding conclusion that fact of plaintiff's replacement by someone substantially

younger gave rise to an inference of age discrimination); Miller, 703 F.Supp. 2d at 245 (holding that the fact that plaintiff was assigned more demanding tasks than similarly situated younger employees gave rise to an inference of age discrimination). Plaintiff asserts that he, known by Defendant to be around sixty-one years old, applied for a position for which he was indisputably qualified, and was not selected when the position was instead filled by three younger individuals, ages 32, 33 and 51.[4] These allegations are sufficient to make out a prima facie case of age discrimination.

### B. Defendant Articulates a Legitimate, Nondiscriminatory Reason for Plaintiff's Non-Selection

Defendant may rebut Plaintiff's prima facie case by offering a legitimate, nondiscriminatory reason for not promoting Plaintiff. McDonnell, 411 U.S. at 802; see also Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 132 (2d Cir. 2012). To meet this burden, Defendant must "clearly set forth" the reasons for Plaintiff's non-selection. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981); Bucalo, 691 F.3d at 132 (noting that, within the McDonnell framework, "the defendant must articulate its legitimate, nondiscriminatory reason with some specificity"). Defendant has met its burden here by articulating a detailed and thorough, multi-step recommendation process, based on objective and legitimate criteria, for filling the SCBPO Position, which led to the selection of Mather, Rollo and Young and the non-selection of Plaintiff. See generally, Defs.' Rule 56.1 Reply St., at ¶¶ 22–34.

---

[4] The fact that one of the selected applicants is a member of Plaintiff's protected class does not undermine the inference of discrimination, so long as the selected applicant is significantly younger than Plaintiff. See Brennan v. Metro Opera Ass'n, Inc., 192 F.3d 310, 317 (2d Cir. 1999) (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996)).

To prepare the recommendation memorandum for which she was responsible, Ms. Polimeni compared all qualified applicants based on certain objective criteria, including, inter alia, their education, their variety of assignments, their awards and commendations within the past ten years and their entrance on duty ("EOD"). See, e.g., Defs.' Decl. in Supp. of Summ. J., Exs. P–S (Candidate Matrices). Ms. Polimeni considered these factors in relation to her knowledge of the agency's needs, the requirements of the SCBPO Position and the feedback she received from the Assistant Area Directors, who had more direct knowledge of the applicants' credentials. See generally Polimeni Dep. Tr. at 38–51. Ms. Polimeni concluded, at the end of this review process, that Mather, Rollo and Youngs were the best qualified applicants for the position, and she prepared a recommendation memorandum reflecting that conclusion. Id. Executive Director Mitchell reviewed Ms. Polimeni's recommendations and re-reviewed the same application materials to ensure that Ms. Polimeni's recommendation memorandum was sound. Satisfied that the three recommended candidates were well qualified for the SCBPO Position, Ms. Mitchell formally recommended them to Assistant Commissioner Jacksta, who approved the recommendation and selected the three recommended individuals.

Neither the applicants' ages nor their dates of birth were considered anywhere on the application materials. By presenting evidence of a legitimate, merit-based review process, which resulted in the selection of three well qualified candidates, Defendant has satisfied its burden in the second phase of the McDonnell test.

### C. Plaintiff Fails to Show Pretext and "But For" Causation

Notwithstanding the relative strengths or weaknesses of the parties' evidence in the first two phases of the McDonnell analysis, the Supreme Court has repeatedly made clear that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

12

against the plaintiff remains at all times with the plaintiff." Bucalo, 691 F.3d at 133 (quoting Burdine, 450 U.S. at 254) (internal editing and quotation marks omitted). To defeat Defendant's motion for summary judgment, Plaintiff's final burden is twofold: he "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence [first] as to whether the employer's reason for the adverse action is false and [second] as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse decision." Vazquez v. Southside United Housing Dev. Fund Corp., No. 06-CV-5997, 2009 WL 2596490, at *8 (E.D.N.Y. Aug. 21, 2009) (Garaufis, J.) (quoting Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1225 (2d Cir. 1994)) (emphasis in original) (internal editing omitted). Plaintiff must therefore introduce evidence from which a fact-finder could reasonably conclude that Defendant's reason for not promoting Plaintiff was pretextual and that the real reason was age discrimination. In other words, if Defendant's non-selection of Plaintiff was "wholly motivated by factors other than age, the problem of [discrimination] disappears." See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993).

Plaintiff has failed to meet his final burden. As the Court concluded infra, Defendant has articulated a legitimate, non-discriminatory basis for promoting the three selected individuals and for not promoting Plaintiff. Notably, all three selected applicants were working as first-line supervisory SCBPOs at JFK at the time of their promotion. Defs.' Rule 56.1 Reply St., at ¶ 76. In addition, Mr. Youngs had received the Commissioner's Award for Anti-Terrorism efforts, which resulted in the apprehension of six Al-Quaeda trained individuals; Mr. Rollo co-wrote the National Outbound Handbook, among other training manuals; and Mr. Mather repeatedly testified at CBP Headquarters as a Subject Matter Expert representing Outbound, Passenger Processing, and Mail Branch Operations. See id. at ¶¶ 56–58. By contrast, at the time of the

13

recommendation process, Plaintiff was not currently employed in a supervisory role and had not received any awards or commendations within the past ten years.[5] See Candidate Matrices.

The parties do not dispute that Plaintiff had thirty-eight years of various agency experience, including significant past supervisory experience, which exceeded the seniority of all three of the selected candidates. Compare Defs.' Decl. in Supp. of Summ. J., Ex. Q with Ex. S. (noting that Plaintiff's EOD with Agency is March, 1979). However, as Plaintiff admits, the SCBPO Position merely required that "individuals must possess one (1) year of specialized experience, equivalent to the GS-12 level." See Pl.'s Mot. in Opp'n to Summ. J, at 16; Defs.' Decl. in Supp. of Summ. J., Ex. F. The SCBPO Position did not require thirty-eight years of experience, nor did it indicate that years of experience would be a consideration in the promotion selection process. See Pl.'s Mot. in Opp'n to Summ. J, at 16; Defs.' Decl. in Supp. of Summ. J., Ex. F. Moreover, Plaintiff has not submitted any evidence that supports his contention that his longer experience renders him better qualified than the three selected candidates.

In fact, Plaintiff has not offered any evidence tending to show that Defendant's explanation was false or improper, other than his own subjective beliefs. Plaintiff's own opinion is insufficient to survive a motion for summary judgment. See Anderson, 477 U.S. at 249–50; Little v. State of N.Y., No. 96-CV-5132, 1998 WL 306545, at *7 (E.D.N.Y. June 8, 1998) (Johnson, J.), aff'd, 173 F.3d 845 (2d Cir. 1999). Courts in the Second Circuit have noted that a Plaintiff may disprove Defendant's legitimate, nondiscriminatory explanation by showing, inter alia, discriminatory statements or admissions, the statistical mix of employees in the workforce, or an atmosphere of discrimination in the workplace. See, e.g., Gibbs v. Consol. Edison Co. of

---

[5] Plaintiff notes that he was selected as the 2005 "Man of the Year" by the Columbia Association of U.S. Customs. Despite being less than ten years old, this award was not included on the Candidate Matrices. Defendant responds that this award was not a "unit citation award", and therefore was appropriately omitted from the Matrices. See Defs.' Rule 56.1 Reply St., at ¶ 74.

14

N.Y., Inc., 714 F.Supp. 85, 89 (S.D.N.Y. 1989) (Kram, J.). By no means exclusive, this list sheds light on what types of evidence may suffice to bolster a Plaintiff's claim of discrimination. In turn, this list underscores the insufficiency of Plaintiff's bare assertion that, because younger individuals were promoted to his exclusion, his employer must be discriminating against him on the basis of his age. See Bucalo, 691 F.3d at 133 (holding that Plaintiff failed to meet her burden where her case was "strikingly devoid of direct evidence of discriminatory . . . intent, and relied on weak inferences from the bare facts of age disparity"); Delaney v. Bank of Am. Corp., No. 11-cv-8151, 2012 WL 6135630, at *11–12 (S.D.N.Y. Dec. 11, 2012) (Engelmayer, J.) (holding that allegation of unfair termination process was insufficient to defeat summary judgment where plaintiff had "not presented any evidence that his supervisors based their termination decision on his age, or . . . on anything other than their assessments of his production and performance").

Plaintiff primarily opposes Defendant's motion with conclusory assertions arguing that Defendant's evidence is uncorroborated, incomplete or otherwise not credible. See, e.g., Pl.'s Rule 56.1 St., at ¶¶ 51, 56 ("[Polimeni's testimony that Mirandona described Youngs as "well respected by all of the managers"] was not backed up anywhere else and Mirandona made no mention of this in his Declaration") ("[N]o disclosure has been made regarding the extent or nature of Mr. Youngs' involvement in the apprehension of Al Quaeda trained individuals. His involvement could have required very little effort."). Without conflicting evidence or testimony, or evidence supporting the unreliability of Defendant's evidence, these assertions are insufficient to create a genuine issue of material, disputed fact. However, Plaintiff also relies on three pieces of independent evidence in support of his opposition. The Court addresses these arguments in turn.

First, Plaintiff argues that ALJ Berry's Order cites to employment statistics, which provide evidence of systematic age discrimination by Defendant. See Pl.'s Rule 56.1 St., at ¶ 91. In particular, Plaintiff notes that Ms. Mitchell did not recommend any candidates over the age of sixty for GS-13 Supervisory CBP Officer positions during the two-year period prior to the selection process at issue, and that 46% of the candidates recommended were between ages thirty-one and thirty-nine. Id. Plaintiff also notes that Mr. Jacksta only recommended the promotion of three individuals who were sixty or above at the time of selection. Id. Without corresponding statistics regarding the total number of applicants over sixty years old who sought GS-13 supervisory positions between 2006 and 2008, or who sought promotion by Mr. Jacksta, respectively, these numbers neither support nor refute Plaintiff's argument. Consequently, this argument fails.

Second, Plaintiff argues Ms. Polimeni's notation that Plaintiff was interested in his "high threes" is direct evidence that he was not promoted due to his age. See Pl.'s Mot. in Opp'n to Summ. J, at 13–15. Plaintiff testified that his interest in "high threes" meant that he wished to improve his pensionable overtime by improving the average of his three consecutive, highest-salaried years. Pl.'s Rule 56.1 St., at ¶ 41; Andretta Dep. Tr. at 194:3–195:17. Nothing in Defendant's evidence is inconsistent with Plaintiff's understanding. Ms. Polimeni's notation that Plaintiff was "interested in getting high three" does not create any inference of age discrimination. Contrary to Plaintiff's assertion, there is no evidence that Ms. Polimeni interpreted Plaintiff's desire to obtain his "high threes" to mean that Plaintiff was referring to the last three years of Plaintiff's employment prior to retirement. See, e.g., Polimeni Dep. Tr. at 81:13–16 ("[Plaintiff] mentioned that he had no intention of retiring."). There is no basis for a reasonable jury to conclude that the notation "interested in getting high three" is circumstantial—

let alone direct—evidence of age discrimination. Neutral comments unrelated to a Plaintiff's protected group are insufficient to give rise to an inference of age discrimination. See Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 92 n.2 (2d Cir. 2001) (disregarding as evidence of discrimination "age-neutral" statements). Therefore, this argument also fails.

Third, Plaintiff argues that Ms. Polimeni's reliance on Assistant Area Director Meekins' negative feedback about Plaintiff was improper, and therefore evidence of pretext, for several reasons. Plaintiff argues that Meekins' negative comments are unreliable because, inter alia: (a) Meekins changed his story by first not recalling and later recalling statements made to Ms. Polimeni about Plaintiff;[6] (b) Meekins did not speak with Plaintiff's supervisor before making this statement; (c) Meekins' input generally was not significantly relied upon in the recommendation process; (d) Meekins had no experience supervising Plaintiff directly; (e) Meekins could not recall the source of the information that led him to negatively comment on Plaintiff's work performance, and could not produce evidence of possible sources of the information; and (f) Polimeni should have, but failed to, investigate the negative feedback reported by Meekins. See Pl.'s Rule 56.1 St., at ¶ 53. But the veracity of Meekins' purported statement to Ms. Polemeni is not at issue unless Plaintiff offers some evidence that Mr. Meekins was deliberately undermining Plaintiff's qualifications to discriminate against him on the basis of his age—something Plaintiff has not done. Even if Mr. Meekins received incorrect information about Plaintiff, or mischaracterized that information in presenting it to Ms. Polimeni, Plaintiff has not offered any evidence that the error was deliberate or discriminatory. Nor has Plaintiff

---

[6] Plaintiff specifically argues Ms. Polimeni's testimony that Assistant Area Director Meekins told her that Plaintiff "was not engaged . . . [and] refused to go out in the field" is not credible because Mr. Meekins at first could not recall whether he discussed Plaintiff with Ms. Polimeni, but later declared that he had "with certainty". Polimeni Dep. Tr. at 13:20–25; Pl.'s Decl. in Opp. of Summ. J., Ex.7 at ¶ 11, Ex.11 at ¶ 1.

17

offered any evidence that Ms. Polimeni unreasonably relied on that information to discriminate against Plaintiff on the basis of his age.[7]

More importantly, Defendant has not alleged that Plaintiff's non-selection was based, even in part, on Mr. Meekins' negative feedback. The record reflects that Defendant thoroughly reviewed numerous qualified applications without any consideration of any applicant's age, and concluded that three individuals—each of whom came highly recommended and was working as a uniformed, first-line SCBPO at the time of his promotion—were the best qualified for the second-line SCBPO Position. Plaintiff has not provided any evidence tending to show that Mather, Rollo and Youngs' selection or Plaintiff's non-selection were the result of age discrimination.

## IV.  CONCLUSION

While Plaintiff was able to present a <u>prima facie</u> showing of age discrimination, Plaintiff has failed to show that age was in fact a "but for" cause of his non-selection for the SCBPO Position. Defendants have offered a legitimate, nondiscriminatory explanation for their selection of three younger individuals. Plaintiff has not raised any genuine issues of material, disputed facts, which tend to disprove Defendant's explanation or prove that Defendant was in fact motivated by a discriminatory agenda. Based on the evidence in the record, no reasonable fact-finder could conclude that Defendant failed to promote Plaintiff on the basis of his age. Accordingly, this Court grants the motion for summary judgment in favor of Defendants and dismisses Plaintiff's complaint in its entirety with prejudice.

---

[7] The Court notes that whether or not Plaintiff was in fact the best qualified applicant for the SCBPO Position is not at issue. While Plaintiff's strong qualifications may offer circumstantial evidence of Defendant's discriminatory intent, without more, it cannot suffice to defeat Defendant's motion. What is at issue is whether Defendant discriminated against Plaintiff's age when it chose to promote three younger individuals.

**SO ORDERED**

Dated: Brooklyn, New York
       February 13, 2013

                                          s/WFK

                                HON. WILLIAM F. KUNTZ, II
                                United States District Judge